1    `

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                        FOR THE DISTRICT OF OREGON

     TERRY RAMSEY,                                    Civil No. 07-196-AA
10                                                    OPINION AND ORDER
              Plaintiff,
11
         vs.
12
     MICHAEL J. ASTRUE,
13   Commissioner of Social Security,

14            Defendant.
     ───────────────────────────────────
15

16   Tim Wilborn
     Wilborn Law Office, P.C.
17   19093 S. Beavercreek Road, PMB #314
     Oregon City, OR 97045
18       Attorney for Plaintiff

19   Karin Immergut
     United States Attorney
20   District of Oregon
     Neil Evans
21   Assistant United States Attorney
     1000 S.W. Third Avenue
22   Portland, Oregon 97204-2902

23   Kathryn A. Miller
     Special Assistant U.S. Attorney
24   Social Security Administration
     701 Fifth Avenue, Suite 2900 M/S 901
25   Seattle, Washington 98104-7075
         Attorneys for Defendant
26

27

28

     1    - OPINION AND ORDER

AIKEN, Judge:

Claimant, Terry Ramsey, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied the plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

PROCEDURAL BACKGROUND

Plaintiff filed his application for DIB and SSI benefits on March 23, 2001. Tr. 89-91, 622-624. On July 9, 2001, the Social Security Administration initially denied plaintiff's application for benefits. Tr. 73-77. On September 28, 2001, plaintiff's application was denied again on reconsideration. Tr. 79-81. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Tr. 82. On June 26, 2003, after a hearing, the ALJ found plaintiff not disabled and therefore denied him benefits. Tr. 643-59. Plaintiff then requested review by the Appeals Council. Tr. 660. On October 1, 2004, the Appeals Council vacated the ALJ's decision and remanded the case back to the Commissioner. Tr. 684-85.

On November 23, 2005, after a new hearing, the ALJ again found plaintiff not disabled. Tr. 22-36. Plaintiff requested review of the ALJ's decision. Tr. 20-21. However, on December 20, 2006, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision. Tr.

10-13.  See also 20 C.F.R. § 422.210.  Plaintiff now seeks judicial review.  42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

Plaintiff was under fifty years old as of the date of the hearing decision and is considered a "younger person" for purposes of this case.  Tr. 89.  See 20 C.F.R. § 404.1563(c). Plaintiff has an eleventh grade education.  Tr. 118.  Plaintiff performed work as a gas station attendant.  Tr. 806.  Plaintiff allegedly became disabled on July 1, 1999 as a result of a combination of impairments including an esophageal impairment, degenerative disc disease of the cervical spine, attention deficit hyperactivity disorder (ADHD), a personality disorder, and depression.  Tr. 28, 89, 112.  The relevant medical evidence is discussed below.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486

3  - OPINION AND ORDER

(9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not

disabled.  If he cannot perform past relevant work, the burden
shifts to the Secretary.  In step five, the Secretary must
establish that the claimant can perform other work.  <u>Yuckert</u>, 482
U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) &
(f).  If the Secretary meets this burden and proves that the
claimant is able to perform other work which exists in the
national economy, he is not disabled.  20 C.F.R. §§ 404.1566,
416.966.

Here, the ALJ found that at step one the plaintiff had not
engaged in substantial gainful activity since his alleged
disability onset date.  Tr. 27, 35 (Finding 2).  This finding is
not in dispute.

At step two, the ALJ found plaintiff had a personality
disorder, depression, possible attention deficit disorder (ADD),
degenerative disc disease of the cervical spine, and esophageal
impairment.  Tr. 28, 35 (Finding 3).  These impairments were
deemed severe.  <u>Id.</u>  This finding is not in dispute.

At step three, the ALJ found the plaintiff's impairments
did not meet or equal the requirements of a listed impairment.
Tr. 28-29, 35 (Finding 4).  This finding is disputed.  Plaintiff
argues his esophageal impairment meets or equals Listing 5.04.

At step four, the ALJ found the plaintiff was not able to
perform his past relevant work.  Tr. 33, 35-36 (Finding 7).  This
finding is not in dispute.

At step five, the ALJ found that, based on plaintiff's

residual function capacity,[1] plaintiff could perform work existing in significant numbers in the national economy, including performing as a electronics worker, decorator of leather products, and as a blind-stitch machine operator. Tr. 36 (Finding 12). This finding is in dispute. Plaintiff argues the ALJ wrongly considered potential step five occupations, identified by the vocational expert, that plaintiff can perform, since such occupations are beyond plaintiff's residual function capacity. Plaintiff contends the ALJ did not consider all of the plaintiff's restrictions. In addition, plaintiff argues the ALJ did not consider all of these restrictions as part of the ALJ's vocational hypothetical. Finally, plaintiff asserts that he can not sustain work activity at any exertional level on a regular and continuous basis.

Overall, plaintiff alleges the ALJ erred by: (1) discounting plaintiff's allegations as not credible; (2) improperly rejecting third-party lay witness testimony; (3) wrongfully dismissing expert medical evidence provided by plaintiff's physicians; (4) improperly ignoring the VA disability

---

[1] The ALJ found plaintiff to have the following residual functional capacity (RFC):

> He is able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for about six hours, and sit for about six hours during an eight hour work day. The claimant is able to do a job in which he only occasionally performs stooping, squatting, twisting, or bending activities, and avoids even moderate exposure to hazards such as machinery or heights. He can perform activities in which his head is not lower than his stomach, in a job that allows for brief inattention (up to one minute) due to pain. He is able to do a job that involves limited interactions with coworkers or the general public.

Tr. 35-36 (Finding 6).

ratings; (5) failing to find that his esophageal impairment met or equaled a listed impairment; and (6) improperly determining that step five occupations identified by the vocational expert were within plaintiff's RFC.  Plaintiff requests this case be reversed and remanded with payment of benefits.

Defendant concedes this case should be reversed and remanded but asks this court to remand for further administrative proceedings.  In response to plaintiff's claims, defendant concedes the ALJ erred in: (1) discrediting plaintiff's credibility on the basis of work activity that occurred in a therapeutic setting, as well as based on his alleged non-compliance with his medications; (2) assigning little weight to plaintiff's VA disability rating; (3) improperly characterizing the treating relationship between Dr. Anthony Haulk and plaintiff, and failing to provide adequate reasons for discounting the medical opinion of VA psychologist Gerald Otis; and (4) failing to incorporate into plaintiff's RFC all of the limitations identified by the medical expert at the hearing.  The defendant denies all other assertions of error.

As such, defendant proposes that on remand, the ALJ will "(1) reassess Plaintiff's credibility; (2) further evaluate the opinions of Drs. Otis, Haulk, and Neal Thompson as well as other treating and examining sources; (3) evaluate the Plaintiff's VA disability rating in accordance with McCarty v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); and (4) reassess Plaintiff's RFC, incorporating any limitations included in the medical evidence that are not specifically rejected." Def. Memo in Support of Remand, p. 6.

7   - OPINION AND ORDER

**DISCUSSION**

A. Legal Standard for Remand

Plaintiff contends this case should be reversed and remanded for payment of benefits as a result of the ALJ's improper rejection of plaintiff's credibility, Dr. Haulk and Dr. Otis' medical opinions, lay witness testimony, and VA disability ratings. Although the Commissioner concedes the ALJ did not take into account all of the relevant information, he argues this case should be remanded for further administrative proceedings. Additional proceedings would be appropriate if enhancing the record would be useful for resolving the disputed issues. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). However, if the record has been fully developed it is appropriate to direct an award of benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Specifically, the court should credit evidence that was rejected by the ALJ and remand for an immediate award of benefits if: the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id. See also Benecke, 379 F.3d at 593; Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).[2] It is within the court's discretion to remand for further proceedings or to award

---

[2] The court in Harman found that this three-part test is really a two party inquiry, in which the third prong is a subcategory of the second. See Harman, 211 F.3d at 1178 n. 7.

8   - OPINION AND ORDER

payment of benefits.  Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).

Courts have held benefits should be awarded if an ALJ has improperly rejected an applicant's subjective symptom testimony, physicians' opinions, or lay testimony based on legally insufficient reasons. See, e.g., Benecke, 379 F.3d at 594; Holohan, 246 F.3d at 1211; Schneider v. Apfel, 223 F.3d 968, 976 (9th Cir. 2000); Smolen, 80 F.3d 1273 at 1292.  Therefore, I must assess whether the ALJ properly rejected the plaintiff's credibility, lay witness testimony, physicians' opinions, and the VA disability ratings based on legally sufficient reasons.  In addition, I will assess, if need be, whether the ALJ erred in failing to find plaintiff's esophageal impairment met or equaled a listed impairment and whether the ALJ improperly relied on the vocational expert's conclusions.

B. Plaintiff Claims

1. ALJ's Rejection of Plaintiff's Credibility.

Plaintiff alleges the ALJ erred in rejecting the testimony that plaintiff offered at the hearing.  Plaintiff argues his testimony, establishing that he was unable to sustain any level of work activity because of his physical and mental impairments. Plaintiff's Opening Brief, pp. 2-5, 17-19; Plaintiff's Reply, pp. 11-12.  The Commissioner agrees the ALJ erred in discrediting plaintiff's credibility on the basis of work activity that occurred in a therapeutic setting, as well as based on his alleged non-compliance with his medications.  However, the Commissioner argues that remand is appropriate to allow the ALJ to reassess plaintiff's credibility.

An ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony as to subjective symptoms once the claimant produces medical evidence of an underlying impairment. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Furthermore, the ALJ must identify specific testimony that is not credible and provide evidence that undermines the claimant's complaints. Id. Moreover, pain testimony is accepted as true if the ALJ does not give specific reasons for rejecting such testimony or if such reasons are not supported by substantial evidence. Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988).

An ALJ may consider the following factors to determine whether the claimant's testimony regarding the severity of his symptoms is credible: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284 (internal citations omitted). In evaluating the credibility of symptom testimony, the ALJ must also consider the factors set out in Social Security Ruling (SSR) 96-7p.[3]

---

[3] SSR 96-7 directs the ALJ as follows:
> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical

10   - OPINION AND ORDER

On May 20, 2003 plaintiff testified to numerous physical ailments, including extreme chest pain resulting from a esophageal condition.  Tr. 812-14.  See also Plaintiff's Opening Brief, pp. 2-5.  In addition, plaintiff reported his physical limitations, such as lifting restrictions.  Tr. 824-25.

The ALJ noted she "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling 96-7p." Tr. 29.  In general, the ALJ found the "claimant's allegations regarding his limitations [as] not totally credible in light of the medical record."  Tr. 35 (Finding 5).  Specifically, the ALJ found

---

evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

11   - OPINION AND ORDER

plaintiff's testimony less than credible because he worked "in incentive therapy employment as a housekeeper at the VA on a nearly full time basis" which is "persuasive evidence that he is capable of some type of work activity." Tr. 29. The ALJ also found plaintiff less credible because plaintiff allegedly failed to comply with his mental health treatment and plaintiff's daily activities were inconsistent with his alleged disability. Tr. 29-31.

I find the ALJ did not provide clear and convincing reasons for rejecting plaintiff's testimony as to his physical and mental impairments related to his work capabilities. There is not substantial evidence in the record to show plaintiff's testimony should be discredited. The Commissioner concedes, as Dr. Otis suggested, that incentive therapy (IT) "is not competitive employment but is a therapeutic activity" that may or may not involve actual work or vocational training. Def. Memo. in Support of Remand, p. 8. Dr. Otis noted plaintiff was not even considered for a Compensated Work Therapy (CWT) position which involved actual work. Tr. 749.

Further, the ALJ's listing of plaintiff's daily activities, such as grooming and hygiene, are insufficient to conclude that plaintiff was able to sustain constant work activity as is required in regular, competitive employment. Tr. 30-31. I find the ALJ has not provided specific reasons supported by substantial evidence in the record to discredit plaintiff's allegations of his physical and mental impairments as related to his work capabilities.

2. <u>ALJ's Rejection of Lay Witness Testimony.</u>

Plaintiff contends the ALJ failed to consider statements made by friends Mike Tucker (Tr. 126-37, 735), Danny Imel (Tr. 732-34), and Cora Sowell (Tr. 736), which described plaintiff's esophageal attacks limiting his ability to function in work settings. An ALJ must take into account lay testimony regarding plaintiff's symptoms unless "he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted). Further, an ALJ may discount lay testimony if it conflicts with medical evidence. <u>Id.</u> (citing <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984)).

The ALJ responded to these letters by stating that plaintiff's overall condition as related to his esophageal condition improved after surgery, especially with plaintiff's use of nitrogylcerin. Tr. 28. Thus, the ALJ did not expressly discredit these third-party statements. Even so, the ALJ determined plaintiff's condition did not meet or medically equal listing 5.03 and 5.04 because his medical records did not demonstrate he incurred recurrent ulceration and did not show that he had the requisite weight loss. Tr. 28. The ALJ seems to rely on gastroenterologist Dr. David William's testimony stating that there was no evidence of esophageal spasms. Tr. 32. These findings were given more credit than Dr. Anthony Haulk's determination that plaintiff's esophageal condition was recurrent after surgery. Tr. 29, 31. Therefore, I must assess whether the ALJ improperly rejected Dr. Haulk's statements and other

13   - OPINION AND ORDER

physicians' medical opinions.

### 3. ALJ's Rejection of Medical Expert Testimony

Plaintiff argues the ALJ improperly rejected the opinions of Drs. Gerald Otis and Anthony Haulk. The medical opinions of three types of physicians are distinguished under Title II's implementing regulations: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining [or reviewing] physicians)." Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (internal citations omitted). Generally, a treating physician's opinion is entitled more weight than the opinions of examining or reviewing physicians. Id. at 1202. Likewise, an examining physician's opinion is entitled to more weight than a reviewing physician's opinion. Id. Physicians normally provide two types of opinions in disability benefits cases: "medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e. opinions about whether a claimant is capable of any work given her or his limitations." Id.

A treating physician's medical opinion must be given controlling weight if it is not inconsistent with other substantial evidence and is supported by medically acceptable diagnostic techniques. Id. See also 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted medical opinions of a treating and examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th

Cir. 1995).  A treating physician's opinion must still be given weight, even if not controlling, if it is inconsistent with other substantial evidence in the record.  If the ALJ decides to discount a treating physician's medical opinion that is controverted and relies on the medical opinion of a non-treating doctor, he or she must still provide "specific and legitimate" reasons.  Holohan, 246 F.3d at 1202-03.

The Ninth Circuit has upheld a Commissioner's decision rejecting a treating or examining physician's opinion in favor of a non-examining's testimony. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 751-5 (9th Cir. 1989); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  In Magallanes, the ALJ relied on the non-examining physician's testimony and laboratory results, despite contrary reports from plaintiff's examining physician, and on plaintiff's testimony which conflicted with her treating physician's opinion.  881 F.2d at 751-52. In Andrews, the ALJ rejected the examining psychologist's opinion because it conflicted with the opinions of five non-examining mental health professionals, claimant's testimony, and other medical evidence in the record.  53 F.3d at 1042-43.  Further, the ALJ relied on the fact the non-examining medical advisor had more expertise in substance abuse, the claimant's alleged disability, than the examining psychologist possessed.  Id. at 1042.  However, the opinion of a non-examining physician can not be the sole basis for rejecting a treating or examining physician's medical opinion.  Lester, 81 F.3d at 831.  See also Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

15   - OPINION AND ORDER

Here, the ALJ's decision to reject the opinions of the treating physician (Dr. Haulk) and that of the examining psychologist (Dr. Otis) was not warranted.  The ALJ based her rejection of the treating and examining sources' opinions on the reviewing opinions provided by Dr. Williams, a gastroenterologist, and state agency psychologists.  Tr. 32.  In addition, the ALJ relied on Dr. Ben Prins' opinion who found plaintiff medically stable to work and the plaintiff's occupational therapist who claimed plaintiff could do light work with limitations in bending, reaching, and twisting.  Tr. 30.

Plaintiff relied on Dr. Haulk's medical opinions.  Dr. Haulk first performed a medical procedure on plaintiff's esophagus on May 18, 2001.  Dr. Haulk listed plaintiff's postoperative diagnosis as esophageal stricture and a hiatal hernia.  Tr. 435.  On June 8, 2001, Dr. Haulk performed a second endoscopy and esophageal dilitation.  Tr. 445.  Thereafter, Dr. Haulk opined plaintiff's esophageal spasms would not improve with surgical treatment.  Tr. 446.  In addition, Dr. Haulk stated in a July 20, 2001 letter that plaintiff's esophageal spasms were "sudden in onset and disabling in nature and occur frequently enough and are of such severity that he is unable to give a sustained effort.  Therefore, his ability to work on any particular day is entirely up in the air.  It is my opinion that Terry Ramsey is disabled by the esophageal spasm, despite being compliant with medical advice and undergoing major surgery on two occasions to attempt to correct the problem.  More likely than not, this will be a permanent condition." Tr. 465.

Dr. Haulk indicated on several occasions that plaintiff's esophageal condition was disabling. For instance, in a letter dated March 12, 2002 Dr. Haulk confirmed plaintiff's esophageal attacks occurring two or three times a week, lasting 10 to 60 minutes at a time, with recovery times ranging from 12 to 24 hours. Tr. 562. On April 2, 2002 Dr. Haulk found plaintiff's chest pain from his esophageal spasms to be permanently disabling because of the spasms' severity and frequency. Tr. 564. Dr. Haulk examined plaintiff again on December 26, 2002 and opined plaintiff was disabled based on esophageal stricture and inflammation and met the criteria for recurrent peptic ulcer disease of the distal esophagus, depression, and delusions. Tr. 607-08. Dr. Haulk stated in his December 26, 2006 letter:

> In my opinion, Terry is permanently and completely disabled because of his reflux disease, which I think was worsened by complications of surgery performed in an attempt to treat it. I've been seeing Terry for several years now and am convinced that he is not malingering. He is currently in the best state of control I've been able to achieve and despite this treatment, he still frequently awakes in the middle of the night with food material and acid coming into his esophagus. His symptoms have been exacerbated by mild muscular activity. When he has a pain attack, he is physically unable to work.

Thereafter, in letters dated February 25, 2003, July 16, 2003, and January 5, 2005, Dr. Haulk further opined plaintiff was disabled and prevented from doing substantive work. Tr. 609, 759, 788. Dr. David Donnelly, another physician who examined plaintiff, remarked that "it is reasonable to assume, after reading the letters from Dr. Anthony Haulk, to believe that the veteran is disabled at this time and his status probably will not improve." Tr. 616.

The ALJ, however, found Dr. Haulk's opinions insufficient

17   - OPINION AND ORDER

to establish plaintiff was disabled under the Social Security standard of disability. Tr. 31. The ALJ gave Dr. Haulk's opinion only "some" weight because Dr. Haulk did not appear to have ever treated the plaintiff. Tr. 31. In addition, Dr. Haulk's comments as to plaintiff's employability were deemed beyond his expertise as a medical doctor. Tr. 31. Finally, the ALJ discounted Dr. Haulk's opinions based on his comments regarding plaintiff's financial plight.

The ALJ gave more weight to Dr. Williams' testimony, a non-examining medical physician, finding no evidence of esophageal spasms during plaintiff's endoscopy and that taking antacid or sipping water would mitigate the effects from plaintiff's alleged spasms. Tr. 32. The ALJ also disputes plaintiff's credibility based on Dr. Williams' remark that he had never seen symptoms of the severity the plaintiff described in his 38 years as a gastroenterologist. Tr. 32. Further, the ALJ noted that Dr. Williams opined that plaintiff had the ability to lift 20 pounds occasionally and 10 pounds frequently. Tr. 32.

Plaintiff argues the ALJ did not accurately characterize the record, especially Dr. Haulk's relationship to plaintiff. Plaintiff contends Dr. Haulk performed two esophageal dilation procedures on plaintiff, examined plaintiff again at least once in December, 2002, and opined multiple times that plaintiff was permanently disabled by his condition.

The plaintiff was also examined by Dr. Gerald Otis, a psychologist, on August 18, 1997. Dr. Otis concluded plaintiff suffered from intermittent explosive disorder, dysthmic disorder, and a personality disorder not otherwise specified. Tr. 221. As

a result, Dr. Otis assigned plaintiff a global assessment of functioning ("GAF") rating of 45.[4]  Id.  Dr. Otis continued to treat plaintiff at the VA.  On March 7, 2003 Dr. Otis found plaintiff no longer suffered from personality disorder but opined that plaintiff met the criteria for an adjustment disorder, which resulted in impaired social functioning.  Tr. 611.  In addition, Dr. Otis noted that although the VA did not have the proper equipment to diagnose plaintiff with ADHD, plaintiff's childhood history was consistent with an ADHD diagnosis, along with plaintiff's responding to the medication Ritalin in the same way a person with ADHD would be expected to respond.  Tr. 611.

The ALJ discounted Dr. Otis' opinions because they were not expressed on VA letterhead and were not based on review of the plaintiff's entire record.  Tr. 33 ("the doctor is not a judge and does not evaluate the record in a meaningful manner").  As such, the ALJ gave no weight to Dr. Otis' August 4, 2004 letter and accepted the state agency psychologists' opinions instead. Plaintiff argues the ALJ did not give clear and convincing reasons for dismissing Dr. Otis' opinion.

---

[4] A GAF rating of 41-50 is defined as:

> Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).

Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th ed. Text Revision 2000).

Plaintiff's GAF rating of 45 and the corresponding range of 41-50 was confirmed by a number of other evaluators, for instance: intake clinician Lou Ann Myer of Jackson County Health Center assigned a GAF rating of 50 (Tr. 492); Dr. Edwin Pearson, a psychologist, assigned a GAF rating of 50 (Tr. 529).

19   - OPINION AND ORDER

The ALJ instead relied on state agency psychologists who reviewed plaintiff's records. Tr. 32. Although the psychologists found plaintiff had an adjustment disorder, a personality disorder, a learning disorder, mild ADHD, and a history of intermittent explosive disorder, they concluded plaintiff "had the ability to do a job that involved interacting with others on a superficial basis." Tr. 32-33. The ALJ also cited to evidence provided by Dr. Edwin Pearson, a psychologist, and Dr. William Lofthouse, a VA psychiatrist, who both concluded that although plaintiff's mental impairments were severe plaintiff had mild to moderate difficulty in social and occupational settings. Tr. 27-28.

The ALJ appears to have treated Dr. Haulk's opinions as controverted by the testimony of Dr. Williams, especially regarding the evaluation of plaintiff's symptoms and recovery time for his esophageal problems. In addition, the ALJ treated Dr. Otis' opinions as controverted by the evaluations conducted by the state agency psychologists and Drs. Pearson and Lofthouse.

Defendant concedes the ALJ did not accurately characterize the treating relationship between Dr. Haulk and plaintiff and did not provide relevant reasons for discounting Dr. Otis' opinion. The Commissioner argues though, before awarding benefits, the ALJ needs to address and clarify whether plaintiff's participation in IT work assignments is valid as substantive work as well as reassess the medical source opinion evidence in the record.

When the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the court credits that opinion as true "as a matter of law" and

20    - OPINION AND ORDER

remands the case for payment of benefits. <u>Pitzer</u>, 908 F.2d at 506. The ALJ's rejection of the treating and examining sources' opinions in favor of Dr. Williams' testimony was not supported by substantial evidence in the record. Dr. Williams' testimony by itself does not constitute substantial evidence in the record that warrants a rejection of Dr. Haulk's medical opinions. In addition, the ALJ improperly discounted Dr. Otis' medical opinions even though she relied on substantial evidence in the record, by citing to Dr. Pearson, Dr. Lofthouse, and the state agency psychologists, to conclude that plaintiff's mental impairments did not preclude plaintiff from being able to do light work. Thus, the ALJ failed to provide legally sufficient reasons for rejecting Drs. Haulk and Otis' medical opinions.

4. <u>ALJ's Rejection of VA Disability Ratings</u>

Plaintiff argues the ALJ improperly rejected the VA's disability ratings. <u>See McCarty v. Massanari</u>, 298 F.3d 1072 (9th Cir. 2002). In September 2003, plaintiff was examined by Dr. Neal Thompson, who noted plaintiff was having spasms in his esophagus between five and twelve times per week, and concluded that plaintiff was not a candidate for active employment. Tr. 752-54. Plaintiff cites to VA rating decisions, dated August 20, 2003, and December 11, 2004, both stating plaintiff's esophageal stricture is 80% disabling. Tr. 688-92, 703-05. On March 10, 2004, the VA granted plaintiff an "individual unemployability" rating effective March 27, 2000. Tr. 694-96. On January 14, 2005, the VA stated plaintiff's overall disability rating was 90% based on a 30% disability rating from incisional hernia due to paraesophageal hernia repairs coupled with the original 80%

21   - OPINION AND ORDER

rating for the stricture of esophagus due to the same repairs. Tr. 721.

The ALJ relies on <u>McCartey</u> for the proposition that an ALJ may give less weight to a VA disability rating so long as she gives specific reasons for doing so.  298 F.3d at 1076; Tr. 32. The ALJ discounted the VA examiner, a nurse practitioner, as not being an acceptable medical source.  Tr. 32.  In addition, the ALJ discounted the nurse practitioner and Dr. Thompson's findings because they allegedly relied exclusively on the plaintiff's subjective reports and Dr. Haulk's results rather than their own findings.  Tr. 32.

Plaintiff argues Dr. Thompson's results should  have been considered.  The Commissioner concedes the ALJ erred in assigning little weight to plaintiff's VA disability ratings.  Defendant's Memo. in Support of Remand, pp. 6, 8.  The Commissioner acknowledged Dr. Thompson's independent physical examination results should have been considered.  The Commissioner requests a remand to evaluate plaintiff's VA disability rating in accordance with <u>McCarty</u>.  However, I find the ALJ had ample opportunity to evaluate Dr. Thompson's examination results in accordance with <u>McCarty</u>.  Based on such evidence, the ALJ failed to provide legally sufficient reasons for rejecting the plaintiff's evidence regarding the VA medical determinations.

5. <u>ALJ's Failure to Find Plaintiff's Esophageal Impairment Meeting or Equaling a Listed Impairment.</u>

If a plaintiff has an impairment or combination of impairments that meets or equals a condition outlined in the "Listing of Impairments," then the plaintiff is presumed disabled

at step three, and the ALJ does not need to make any specific findings as to his or her ability to perform past relevant work or any other jobs.    20 C.F.R. § 404.1520(d).    All relevant evidence must be evaluated by the ALJ before he or she concludes plaintiff's impairments do not meet or equal a listed impairment. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).    Further, an ALJ may not rely on a boilerplate finding to conclude that the plaintiff has not met or equaled the listed impairment.    Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).    Finally, courts may remand with payment of benefits when the ALJ improperly rejects evidence which demonstrates the plaintiff meets or equals the listing.    Schneider, 223 F.3d at 976 (citing Lester, 81 F.3d at 834; Smolen, 80 F.3d at 1292).

Plaintiff contends the ALJ erred under Marcia by failing to elaborate on her determination that plaintiff's esophageal condition did not meet or equal an impairment listed in Appendix 1, specifically Listing 5.04, peptic ulcer disease.[5]    Plaintiff

---

[5] 5.04 Peptic ulcer disease (demonstrated by X-ray or endoscopy). With:

    A. Recurrent ulceration after definitive surgery persistent despite therapy; or
    B. Inoperable fistula formation; or
    C. Recurrent obstruction demonstrated by X-ray or endoscopy. or
    D. Weight loss as described under § 5.08.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.04 (2007).

Although inapplicable to this case, it must be noted that listing 5.04 was removed recently because "[a]dvances in medical and surgical management have made less common many complications from peptic ulcer disease, such as recurrent ulceration (prior listing 5.04A) ***." The federal regulations, effective December 18, 2007, note that the prior listing criteria for this impairment is no longer an appropriate indicator since treatment often results in significant improvement. See Revised Medical Criteria for Evaluating Digestive Disorders, 72 Fed. Reg. 59398,

argues the ALJ improperly disregarded medical opinions provided by Drs. Haulk and Donnelly both stating that plaintiff had an extreme esophageal condition and therefore met or equaled Listing 5.04. Plaintiff documents medical tests, and the results, related to his esophageal condition including: a barium swallow test in January 1999 indicating esophageal conditioning; a diagnostic upper GI test, indicating a large hiatal hernia; undergoing a second surgery to repair the lower esophageal gastric junction; and two esophageal dilitation procedures performed by Dr. Haulk. See Plaintiff's Opening Brief, pp. 24. Plaintiff relies on comments made by Dr. Donnelly who diagnosed and reported that plaintiff was having ongoing difficulties with nausea, vomiting, and severe esophageal spasms. Tr. 613-16. Plaintiff also notes Dr. Haulk's opinion, who concluded that plaintiff's impairments met Listing 5.04 because he had an endoscopy showing ulceration at the GE junction with peptic etiology. Tr. 607-08. Dr. Haulk commented that plaintiff's condition was recurrent after definitive surgery. Tr. 608.

The Commissioner agrees remand is appropriate but requests additional proceedings arguing the record is not fully developed. Specifically, the Commissioner contends additional proceedings are required for the ALJ to fully address the severity of plaintiff's esophageal impairment at step three.

The ALJ noted that based on the medical evidence, the plaintiff's esophageal impairment was severe, "but not 'severe' enough to meet or medically equal, either singly or in

59401 (October 19, 2007).

combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Tr. 28. The ALJ reviewed plaintiff's medical records regarding his esophageal impairment. Tr. 28. She noted plaintiff underwent Nissen fundoplication surgery in February 1999 which mitigated plaintiff's heartburn. The ALJ also found plaintiff was 20 to 25 pounds over his ideal weight after his fundoplication was repaired in October 1999, even though plaintiff complained he was unable to eat. Thereafter, the ALJ stated that plaintiff's overall condition improved after his dilation surgeries in May and June 2001, with nitroglycerin being especially helpful, despite plaintiff's complaints of choking while eating and the inability to breathe due to physical pain.   In addition, the ALJ found that plaintiff's smoking exacerbated his esophageal condition. Finally, the ALJ concluded plaintiff's medical records did not demonstrate that plaintiff had recurrent ulceration, and ultimately dismissed Dr. Haulk's opinion. Tr. 29.

Although the ALJ suggested that plaintiff's esophageal condition might be improving, the ALJ did not make findings, as plaintiff notes, as to the nature and extent of plaintiff's esophageal condition in regards to Listing 5.04. Specifically, the ALJ did not provide clear reasons for rejecting Dr. Haulk's medical opinion that plaintiff's esophageal impairment was recurrent.  Also, the ALJ did not make findings that plaintiff's physical condition was the result of non-compliance with his prescribed medication, such as his use of nitroglycerin. Notwithstanding the ALJ's decision to find that plaintiff did not meet Listing 5.04, the ALJ did not discuss any reasons for

finding that plaintiff's impairments did not equal this listing or other listings as required by the Ninth Circuit. See Marcia, 900 F.2d at 176 (ALJ must explain adequately his evaluation of alternative tests and combined effects of impairments in determining whether a claimant equals a listing). Further, the ALJ did not address whether plaintiff's physical and mental impairments, when combined, met or equaled a particular listing, as required by the Ninth Circuit. See Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir. 1985) (claimant's conditions "must be considered in combination and must not be fragmentized in evaluating their effects").

I find plaintiff meets listing 5.04, therefore he is presumptively disabled as to step three of the sequential analysis of disability. 20 C.F.R. § 15.20(a)(4)(iii). Because I conclude plaintiff's condition meets a listed impairment, and he qualifies for benefits at step three, it is unnecessary for me to address the ALJ's application of steps four and five.

C. Remand for Payment of Benefits

The final question is whether to remand for further administrative proceedings and additional evidence or simply for payment of benefits. A remand for further proceedings is unnecessary if the record is fully developed and the record clearly shows the ALJ would be required to award benefits. Holohan, 246 F.3d at 1210. This rule was adopted to serve the primary purpose of the Social Security act, which was to give financial assistance to the disabled who could not sustain themselves. Id.

The record is fully developed in this case and additional proceedings would not be helpful.  The ALJ did not properly assess plaintiff's credibility, improperly rejected the VA disability rating, and wrongfully dismissed the medical opinions provided by Dr. Haulk and Dr. Otis.

When the Commissioner fails to provide sufficient reasons for rejecting the medical opinion of a treating or examining physician, that opinion is credited as a matter of law.  Lester, 81 F.3d at 834; Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).  It is clear from the record that if Dr. Haulk's medical opinions were taken into account, the ALJ would be required to find plaintiff disabled if such evidence was credited.  Thus, under Lester, I accept Dr. Haulk's opinion and the plaintiff's testimony as a matter of law and, accordingly, remand for payment of benefits.

In addition, there are no outstanding issues that must be resolved regarding plaintiff's VA disability ratings nor Dr. Thompson's findings.  Here, the VA's disability finding was supported by some medical evidence.  McCarty holds that an ALJ "must ordinarily give great weight to a VA determination of disability."  298 F.3d at 107.  Thus, the record is fully developed and, giving great weight to the VA disability rating, a finding of disability is clearly required.  No purpose would be served by remanding for further proceedings.

///

///

///

///

27  - OPINION AND ORDER

**CONCLUSION**

Accordingly, this case is reversed and remanded for payment of benefits. This case is dismissed. IT IS SO ORDERED.

Dated this __11__ day of April 2008.


                          _____/s/ Ann Aiken_____
                              Ann Aiken
                          United States District Judge